UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY DAVIS,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

Case No. 07-14883

John Feikens
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)**

**I.   PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On November 14, 2007  plaintiff[1] filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Feikens referred this matter to Magistrate Judge Donald A. Scheer for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a

_____

[1] Plaintiff, Shirley Davis, maintains the present cause of action on behalf of the minor children of Pamela Davis, the claimant in this case, who passed away after the decision by the Commissioner but before the case was filed in district court.  According to the complaint, Pamela Davis passed away on June 9, 2007.

period of disability, disability insurance, and Supplemental Security Income

benefits.  (Dkt. 2).  On January 15, 2008, this matter was reassigned to the

undersigned.  (Dkt. 4).  This matter is currently before the Court on cross-motions

for summary judgment.  (Dkt. 9, 14).

      B.    <u>Administrative Proceedings</u>

      Pamela Davis (claimant) filed the instant administrative claims on February

13, 2002, alleging that she became unable to work as of February 20, 2001.  (Dkt.

5, Transcript of Social Security Proceedings, at 31-32).  The claim was initially

disapproved by the Commissioner on April 29, 2002.  (Tr. at 35).  Claimant

requested a hearing and, on July 22, 2004, she appeared with counsel before

Administrative Law Judge (ALJ) Stephen E. Davis, who considered the case *de*

*novo*.  In a decision dated September 23, 2004, the ALJ found that claimant was

not disabled.  (Tr. at 18-25).  Apparently notice of the decision was sent to the

wrong address and neither claimant nor her counsel received a copy of the notice

in a timely fashion.  (Tr. at 13).  Claimant requested a review of this decision on

September 21, 2005.  (Tr. at 11).  The ALJ's decision became the final decision of

the Commissioner when the Appeals Council, on September 20, 2007, denied

claimant's request for review.  (Tr. at 4).

In light of the entire record in this case, I suggest that both motions for summary judgment be **DENIED** and that the case be **REMANDED** to the Commissioner for further proceedings.

## II.    STATEMENT OF FACTS

A.    <u>Claimant's Testimony and Statements</u>

Claimant was 34 years old at the time of the hearing before the ALJ in July of 2004. (Tr. at 507). She had a high school education. (Tr. at 512). She had previously worked as a security officer, a teacher's aid, a cook's assistant, a correctional officer and a dietary aide. (Tr. at 68). Her work history began in July of 1992 and concluded in February of 2001. *Id.* She said she stopped working when she became ill while being pregnant in 2001. (Tr. at 508).

Claimant testified that she could only walk a half block before experiencing shortness of breath. (Tr. at 509). She said she could only stand for a few minutes before feeling dizzy and must sit down. She attributed the dizzy feeling to the medications she was taking for her heart problems. (Tr. at 10). Sitting also posed a problem for her due to stiffness in her legs as did lifting things due to cramping in her hands from swelling. *Id.* Claimant had been told by her doctor that her medications and poor circulation caused these problems. *Id.* When asked to describe a typical day, claimant testified that she got up, did some things for her children, and had to lay down three times during the day for between one and two

hours each time.  (Tr. at 511, 514-15).  She also indicated her aunt and uncle

helped her with the children and with "laundry, running errands, grocery shopping,

cleaning, [and babysitting]."  (Tr. at 511).  She said she has shortness of breath

"regularly" and could not read or watch TV very long before falling asleep.  (Tr. at

516-17).

> B.    Medical Evidence

Claimant stated that she had been disabled since February of 2001.  (Tr. at

506).  She testified that she stopped work due to an illness she experienced while

pregnant.  (Tr. at 508).  The medical records in this case demonstrate that she

sought treatment at Alexian Brothers Medical Center on February 26, 2001, for

nausea, vomiting and related symptoms during her 20th week of pregnancy.  (Tr.

at 90-109).  She was diagnosed as having severe gastroenteritis and dehydration.

*Id*.  At that time, it was noted that she had no chest pain or shortness of breath.  *Id*.

On March 8, 2001, she was admitted to Christ Hospital and Medical Center

for dehydration.  While being examined there, an x-ray was taken that revealed

heart issues involving her left ventricle which, at that time, were viewed as

"consistent with normal changes in pregnancy."  (Tr. at 121).  It was also noted

that she had a "mild nonspecific prominence of the left ventricle," which led to an

assessment of that issue.  The assessment resulted in the conclusion that she had

"mild to moderate" mitral regurgitation.  (Tr. at 129-34).

Claimant returned to Christ Hospital on March 20, 2001, having continued problems with diarrhea and it was noted that she had not been taking the medication she had previously been given.  (Tr. at 138-155).  She again went to Christ Hospital on May 13, 2001, where she had an emergency C-section and some related bowel surgery.  At that time, it was noted that she was "apparently in good health" with no ongoing medical problems.  (Tr. at 159-76).

On July 22, 2001, she went back to Alexian Brothers Medical Center complaining of shortness of breath and swelling in her legs.  It was noted that she had been to "Lake Zurich" where she was told she had congestive heart failure.[2] (Tr. at 177-208).  It was determined that she had a "very poor" left ventricle ejection fraction as well as a mildly enlarged heart with a moderately dilated left ventricle and mitral valve prolapse.  *Id*.

Claimant followed up on her cardiac problems in November of 2001 and on March 14, 2002, Dr. James R. Mason wrote a letter regarding the disability application of claimant (the disability application had been filed on February 13, 2002) in which he characterized her condition as "severe dilated cardiomyopathy," which resulted in "significant disability with Functional Class III dyspnea on exertion."  (Tr. at 210).

---

[2] The records do not explain what type of institution "Lake Zurich" was and no records were provided from that institution as part of this administrative record.

On April 22, 2002, claimant was given a physical residual functional capacity assessment.  At that time it was determined that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours of an eight hour work day, sit for six hours of an eight hour work day and had unlimited ability to push or pull.  (Tr. at 241-48).  It was noted that she was able to take care of her baby, do house cleaning, do laundry and go shopping.  Given her ability to carry out those duties the doctor conducting the assessment, Dr. Gotanco, thought she was able to do "light" work.  *Id.*

On  April 24, 2002, Dr. Chikham commented on claimants' treatment between July of 2001 and October of 2001.  He indicated that claimant had been determined to have "mitral valve prolapse with severe mitral regurgitation."  (Tr. at 211-12).  She was seen by Dr. Ghani on March 28, 2002, who stated, on June 13, 2002, that claimant "cannot have strenuous physical activity which might worsen her congestive heart failure and her mitral sufficiency."  Dr. Ghani also told claimant that she would require valve surgery.  (Tr. at 216-17).

Another consultative assessment of claimant's ability to do work was done on August 7, 2002, by Dr. Puri.  The report from that assessment indicated that claimant was limited to "occasionally" lifting less than ten pounds and that she could not "frequently" lift anything, that she could stand or walk for less than two hours in an eight hour work day due to shortness of breath, that her ability to sit

Report and Recommendation
Cross Motions for Summary Judgment
*Davis v. Comm'r*, No. 07-14883

was not impaired but she had limited ability to push or pull in both upper and lower extremities, that she could never climb ramps, stairs or ladders and that her ability to perform activities involving balancing, kneeling, crouching, crawling or stooping was limited to "occasionally" due to shortness of breath and dizziness. The report also indicated she had no limitations regarding manipulative functions or visual/communicative functions, but that she had environmental limitations relating to temperature extremes, dust, vibration, humidity/wetness, hazards and fumes or odors which may worsen her shortness of breath. (Tr. at 234-37). Dr. Puri's examination of claimant on that date indicated she had mitral valve prolapse, which resulted in "limited physical capacity." (Tr. at 218-21).

In November and December of 2002, claimant was seen by Dr. Akkad of Affiliated Internists, who indicated that she was "doing fairly well" but that she experienced shortness of breath on moderate activities. (Tr. at 259). Dr. Akkad's testing resulted in a diagnosis of "left ventricular hypertrophy" and "left atrial enlargement." The doctor also said she had moderate to severe mitral regurgitation. (Tr. at 262-68).

The next medical records relate to June 23, 2003, when former plaintiff was determined to be pregnant again. At that time, it was noted that she became fatigued after walking 3-4 blocks, that she had no peripheral edema and that her

EKG was within normal limits.  These were the last medical records considered by the ALJ.[3]

C.    ALJ Findings and Decision

The ALJ found that claimant met the insured status requirements of the Social Security Act at the time of her claimed disability onset through at least July 22, 2004, the date of the hearing.  (Tr. at 18).  He then followed the five-step sequential evaluation process established in 20 C.F.R. § 404.1520(a) and § 416.920(a) in order to reach a decision on claimant's application.  At the first step of process, the ALJ concluded that claimant had not engaged in substantial gainful activity since the claimed onset of her disability, which was February 20, 2001.  (Tr. at 18).

At the second step, claimant was found to have a severe impairment of valvular heart disease, which limited her ability to perform basic work-related activities.  (Tr. at 19).  At the third step, the ALJ determined that claimant's

---

[3] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  See *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

impairment did not meet or equal one of the impairments listed in Appendix 1,
Subpart P of Regulation No. 4 ("the listing").  (Tr. at 19).  In order to determine
the fourth step in the process, whether claimant could return to her past relevant
work, the ALJ had to make a finding regarding claimant's residual functional
capacity (RFC).  The ALJ reviewed claimant's medical history, noting that initial
concerns regarding her heart were considered changes consistent with her
pregnancy in March of 2001.  (Tr. at 20).  The ALJ further observed that claimant
went to an emergency room in July of 2001 complaining of shortness of breath
and edema.  At that time, claimant was found to have a heart murmur, congestive
heart failure, a moderately dilated left ventricle, severe hypokinesia of the left
ventricle and severe mitral valve insufficiency related to significant mitral valve
prolapse.  *Id*.  Her ejection fraction was only 15%.  *Id*.  Claimant's condition
improved during the hospitalization and she had no edema and only a grade 2
systolic murmur on discharge.  (Tr. at 20).

    The ALJ pointed out that, when claimant visited a cardiologist in November
of 2001, she did not appear to have some of the symptoms she previously had, but
she still had "significant disability" and was a functional class III because of
shortness of breath on exertion.[4]  The doctor determined that claimant's congestive

---

    [4] The New York Heart Association functional rating scale provides that a
Class III patient has "marked limitation of activity" and is "comfortable only at

heart failure was well compensated but that it did not permit strenuous physical activity because that may aggravate her congestive heart failure or her mitral insufficiency.  *Id.*

In August of 2002, a consultive examination with a cardiologist took place. Claimant's heart was found to be enlarged and she was found to have a heart murmur.  (Tr. at 21-21).  Tests showed that she had a significant prolapse of the mitral valve in the left atrium with moderate to marked mitral regurgitation but only mildly impaired systolic functioning.  *Id.*  A stress test showed poor physical tolerance and had to be stopped after one minute due to fatigue and shortness of breath.  *Id.*  She had no clinical evidence of congestive heart failure but she continued to complain about shortness of breath, occasional dizziness rapid heart beat with even mild exertion.  *Id.*  Although the doctor concluded that claimant's left ventricle dilation had mostly resolved, he also felt she was still limited in her physical capacity and might benefit from a valve replacement.  *Id.*

In November and December of 2002, claimant saw a different cardiologist, Dr. Akkad.  Dr. Akkad found her to be stable and not in active heart failure.  He felt that she had recovered her left ventricular functioning and that she was doing extremely well from a clinical standpoint.  (Tr. at 21).

---

rest."

Report and Recommendation
Cross Motions for Summary Judgment
*Davis v. Comm'r*, No. 07-14883

The next, and last, medical report considered by the ALJ was from June of 2003 when claimant was pregnant again. At that time she was considered a functional Class I to II patient[5] due to her inability to only walk three to four blocks at a moderate pace. *Id*. She had no peripheral edema at that time, although she still had a heart murmur. *Id*.

After reviewing the medical evidence, the ALJ commented on claimant's testimony regarding her activities and then concluded that she was "partially credible." (Tr. at 22). The apparent basis of that conclusion is that, while he stated she was "severely limited for a few months in 2001," she recovered "some" of her functioning by the time of her doctor visit in November of 2001 and the doctor only said she should avoid "strenuous" physical activity because of shortness of breath on exertion. *Id*. Also, the ALJ seemed to rely on the doctor's comments from a consultive examination in August of 2002 that claimant could walk around the doctor's office, in order to conclude that she was capable of physical activity that was not strenuous. *Id*. The ALJ also relied on a statement claimant made on March 14, 2002, where she indicated that she cooked, cleaned her house, did laundry, shopped and cared for her child, contrary to the statements

─────────────

[5] According to the New York Heart Association Classification, a Class I patient has no limitation of activities while a Class II patient has slight or mild limitation of activity.

she made at the hearing, in determining her lack of complete credibility. *Id*. Further, the ALJ said claimant's doctors had not limited her activities to the degree that she claimed to be limited and they have not told her to seek the assistance that she said she is receiving from her relatives with respect to caring for her children and taking care of her household. *Id*.

The ALJ ultimately concluded that claimant could perform "sedentary" work based on his assessment of claimant's credibility and the opinions of two consultative doctors. One of those doctors, in August of 2002, said "that she could lift and carry less than ten pounds on an occasional basis and could not lift or carry any amount on a frequent basis" although she could stand and walk for less than two hours during an eight hour work day and could sit without limitation for the eight hour work day. This consulting doctor also found that claimant was limited in her ability to push or pull  but that she should never climb and only occasionally kneel, crouch or crawl. *Id*. However, the same doctor said she should avoid environmental issues such as temperature extremes, dust, vibration, humidity, hazards and fumes because they might worsen her shortness of breath. *Id*. The second consultative doctor said that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk for six hours in a work day and could sit for six hours in a work day. *Id*.

Report and Recommendation
Cross Motions for Summary Judgment
*Davis v. Comm'r*, No. 07-14883

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*per curiam*).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case *de novo*... ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  The scope of the court's review is limited to an examination of the record only.  *Brainard*, 889 F.2d at 681.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 681

(citing *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'"  *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, on whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision.  *Newton v. Sec'y of Health & Human Servs.*, 1992 WL 162557 (6th Cir. 1992).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review).

Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner*, 745 F.2d at 387-388.

B.     Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability
Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*)
Title II benefits are available to qualifying wage earners who become disabled
prior to the expiration of their insured status; Title XVI benefits are available to
poverty-stricken adults and children who become disabled.  F. Bloch, Federal
Disability Law and Practice, § 1.1 (1984).  While the two programs have different
eligibility requirements, both require a finding of disability for the award of
benefits.

The Commissioner's regulations provide that disability is to be determined
through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, benefits are
> denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals
> one of the impairments listed in the regulations, the
> claimant is conclusively presumed to be disabled without
> further analysis.

Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *see also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n. 2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

C.    <u>Analysis and Conclusions</u>

The ALJ determined that former plaintiff possessed the residual functional capacity to perform sedentary work.  (Tr. at 23).  Sedentary work is defined as follows:

Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a

> sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary
> if walking and standing are required occasionally and
> other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (1991).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of
> exertion, periods of standing or walking should generally
> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday.  Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

After a review of the record, I suggest that the ALJ utilized the proper legal

standard in his application of the Commissioner's five-step disability analysis to

plaintiff's claim.  I turn next to the consideration of whether substantial evidence

supports the ALJ's decision.

Plaintiff argues that substantial evidence fails to support the findings of the

Commissioner.  In this Circuit, if the Commissioner's decision is supported by

substantial evidence, it must be affirmed even if the reviewing court would decide

the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983),

and even if substantial evidence also supports the opposite conclusion.  *Mullen,*

800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's position is premised on the contentions that (1) it was improper for the ALJ to find that there were jobs available in the economy that claimant was able to perform in the absence of the testimony of a vocational expert; and (2) there was no medical evidence in the record that supported the finding that claimant had the residual functional capacity to do sedentary work.  In conjunction with the second issue, plaintiff contends that the ALJ cannot ignore the medical evidence of record and substitute his own opinion regarding claimant's level of disability.  Defendant's response to plaintiff's position is that the Medical-Vocational Guidelines are sufficient to establish the existence of jobs in the economy that claimant was able to perform given the residual functional capacity that the ALJ found for claimant.  Additionally, defendant argues that the findings of Dr. Puri, an examining consultant, were that claimant was able to perform sedentary work.  Also, defendant submits that the state agency reviewing physicians believed that claimant could perform more than sedentary work.  According to defendant, these medical opinions established a proper basis for the ALJ to find that claimant was able to perform sedentary work.

1.    Absence of Vocational Expert Testimony

Once the ALJ finds that a plaintiff is unable to perform his or her past relevant work the burden shifts to the Commissioner to establish that there are jobs available in the national economy that the plaintiff is able to perform.  One way to do that is to rely on the Medical-Vocational Guidelines, commonly known as the "grids."  20 C.F.R. § 404.1501, *et se*q.  However, there are limitations in the use of the "grids" as a substitute for the testimony of a vocational expert.  In *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990), the court stated that the grid rules consider only exertional or strength limitations and generally cannot be applied in the presence of significant non-exertional limitations such as mental limitations, manipulative limitations, or environmental limitations.  In the present case, the defendant's consultative expert, Dr. Puri, stated that, while claimant had the exertional capability of doing sedentary work, she should avoid temperature extremes, dust, vibration, humidity, hazards and fumes in her employment.  (Tr. at 237).  No evidence contradicted that opinion and the ALJ never concluded that those limitations should not apply.  In a case closer factually to the present case, the court held that the "grid" regulations could not be applied in the presence of a non-exertional limitation unless there was reliable evidence that the non-exertional limitation (there environmental pollutants or irritants) would not significantly affect the ability to perform work at a designated exertional level.  *Shelman v.*

*Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). There is no evidence of any kind in the present case suggesting that the environmental limitations identified by Dr. Puri would not significantly affect claimant's ability to perform work at the sedentary exertional level. A similar conclusion was reached in *Damron v. Secretary of H.E.W.*, 778 F.2d 279, 282 (6th Cir. 1985).

A second factor in the present case indicating that the use of the "grid" was inappropriate was whether claimant would be limited to jobs that would permit the employee to alternate sitting and standing. Claimant testified that she could neither sit nor stand for long periods of time. (Tr. at 510). Where a plaintiff is limited to such jobs, the "grid" is not appropriate for determining that suitable jobs exist in the economy. *Howse v. Heckler*, 782 F.2d 626, 628 (6th Cir. 1986).

Based on the above authority, the "grid" did not establish the existence of suitable jobs in the national economy and, therefore, the ALJ did not have a substantial basis for his conclusion that such jobs existed.

## 2.   Credibility

While not challenged by plaintiff in her motion for summary judgment, the finding by the ALJ that claimant was not fully credible in her description of her limitations is not properly founded. The credibility finding by the ALJ is entitled to great deference, but it must be supported by substantial evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). The ALJ relied on several factors in

determining that claimant was not fully credible.  Those factors included (1)

claimant's symptoms appeared to be inconsistent with the medical opinions, (2)

claimant was "able to walk around her doctor's office without becoming short of

breath," (3) claimant's treating doctors did not restrict her to the limitations she

claimed and had not advised her to seek the assistance from relatives she testified

she received, and (4) she must be able to lift more than ten pounds because she has

to care for her two children by herself at times.  (Tr. at 22).

The factor associated with claimant walking around her doctor's office was

indeed a statement included in the report of consultative Dr. Puri.  (Tr. at 219).

However, it was a statement completely lacking in detail or foundation.  In order

to rely on such a statement, the ALJ would have to speculate on too many issues,

such as the size of the room or the distance walked, to allow such a comment to

serve as substantial evidence of claimant's condition.  Similarly, the fact that

claimant had to care for her two children by herself on occasion does not properly

serve as a basis to conclude that she is not credible or is able to lift more than

defendant's own consultative doctor said she was capable of lifting.  This factor

too would require unreasonable speculation on the part of the ALJ in the absence

of evidence in the record describing the circumstances under which claimant cared

for her children by herself.  While there may be other appropriate evidence in the

record that would cause the ALJ to conclude that claimant was not completely

Report and Recommendation
Cross Motions for Summary Judgment
*Davis v. Comm'r*, No. 07-14883

credible regarding her symptoms, the ALJ should have to reach that conclusion without relying on the speculation he engaged in based on these identified factors.

      3.     Conclusion

The District Court is permitted, pursuant to 42 U.S.C. § 405(g), to enter a judgment reversing the findings of the Commissioner and remanding for a hearing. In light of the above determination that the ALJ did not rely on substantial evidence in concluding that jobs were available in the national economy and did not properly make findings relating to the credibility of the plaintiff, it is recommended that the case be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration. *Faucher v. Sec'y of Health and Human Serv.,* *17 F.3d 171, 175-76 (6th Cir. 1994).* The undersigned is aware that this matter has been pending for a considerable length of time and that a remand for further administrative proceedings will additionally delay a final decision. However, a remand for payment of benefits is only proper where all the essential factual issues have been resolved and record adequately establishes a plaintiff's entitlement to benefits. *Id.* It cannot be said in this case that all factual matters have been resolved and that plaintiff is entitled to have the benefits paid. *See Butler v.* *Bowen, 865 F.2d 173, 175 (8th Cir. 1989)* (remand proper where defendant should have used a vocational expert rather than relying on the "grid").

## IV.    RECOMMENDATION

In light of the entire record in this case, I suggest that both motions for summary judgment be **DENIED** and that the case be **REMANDED** to the Commissioner for further proceedings.

## V.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party must file a response.  The response must not exceed 20 pages in length unless such page limit is extended by the Court.  The response must address specifically, and in the same order raised, each issue contained within the

24

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk_____

Date: February 3, 2009               Michael Hluchaniuk
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 3, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Norton J. Cohen, Vanessa Miree Mays, AUSA, and Commissioner of Social Security.

s/Darlene Chubb_____
Judicial Assistant
